

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **QUITMON HARTZOL,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 05 C 2120 |
| | ) |
| **McDONALD'S CORPORATION,** | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This action is brought under Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981 by Quitmon Hartzol ("Hartzol") against his former employer, McDonald's Corporation ("McDonald's"). Hartzol has brought race discrimination and retaliation claims against McDonald's, and McDonald's has moved for summary judgment. I grant McDonald's motion.

I.

Summary judgment is appropriate where the record and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1090 (7th Cir. 1999); Fed. R. Civ. P. 56(c). I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Evidence presented in opposition to a motion for summary judgment

must be admissible in content, though it need not be in an admissible form. *Payne v. Pauley*, 337 F.3d 767, 775 n.3 (7th Cir. 2003) (citing *Stinnett v. Iron Works Gym/Executive Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002)). *See also Juarez v. Menard, Inc.*, 366 F.3d 479, 484 n.4 (7th Cir. 2004) (noting that affidavits submitted in opposition to summary judgment must be based on personal knowledge such that they would be admissible at trial).

McDonald's has moved to strike portions of Hartzol's response to its Local Rule 56.1 statement of facts. Some of Hartzol's responses to particular facts within that statement do not conform to Local Rule 56.1(b)(3) because they do not contain specific references to affidavits, parts of the record, or other supporting materials, or are argumentative or contain improper legal conclusions. I will not consider the portions of his responses that do not comport with the local rules. McDonald's has also moved to strike Hartzol's submission entitled "Attachments to Summary Judgments" and the exhibits submitted with that document and with Hartzol's responses to McDonald's statement of facts. I likewise will not consider any portion of those documents that does not comply with the local rules or that would be inadmissible at trial.

From reviewing the pleadings and submissions of both parties, the undisputed facts are as follows: McDonald's employed Hartzol for approximately ten years, from 1994 until he was terminated on January 31, 2004. During that time, he had moved up the employee and managerial ranks, starting as a crew chief and eventually becoming a restaurant manager. Hartzol served as the manager of several McDonald's restaurant locations.

During his employment with McDonald's, Hartzol participated in training about McDonald's food safety standards and its safety and security policies, including cash handling procedures. McDonald's policies provide that a restaurant manager is responsible for the restaurant employees' adherence to McDonald's policies and procedures. McDonald's food safety procedures include requirements as to the temperature at which meat must be served, and requirements that each restaurant complete daily safety checks for compliance with that and other safety measures. McDonald's provides its restaurants with checklists that each restaurant must complete daily. A restaurant manager is required to oversee their completion by signing the "Manager verification" section of the checklist. McDonald's safety and security procedures include procedures for handling cash which cover the validation of cash deposits, reconciliation of cash registers, and bank deposits.

McDonald's restaurant managers are also required to enforce these procedures and ensure employees adhere to them.

McDonald's has in place a "progressive discipline policy" that it applies to discipline managers who violate its policies and procedures. This policy generally means that managers are first verbally warned, then given a written warning, then suspended, and, ultimately, discharged. The policy allows McDonald's to institute higher levels of discipline before lower levels if necessary. Hartzol disputes whether McDonald's applies the progressive discipline policy consistently between African-American and non-African-American employees.

Although the parties dispute their veracity and relevance, McDonald's issued Hartzol several warnings and negative performance reviews during his employment. In 2000, while Hartzol was the restaurant manager at a Bensonville restaurant, he was given a performance update which categorized his performance as "at an unacceptable level" due to numerous staffing and management issues including "consistency with expectations of managers duties in Food Safety, and Security. And documenting those who don't complete their duties." In early 2001, Hartzol was reprimanded for "two occurrences of mishandling of McDonald's funds." In one instance, a restaurant safe was short funds, and in another Hartzol purportedly asked two lower managers to contribute funds to help him cover a $150.00 cash shortfall.

4

Hartzol took over a McDonald's restaurant location near the intersection of Kedzie and Foster in Chicago (the "Kedzie/Foster restaurant") in December of 2001. McDonald's Operations Consultant Tom Fay ("Fay"), an employee responsible for evaluating and overseeing the restaurant's performance, gave the restaurant a "Needs Improvement" rating for the third and fourth quarters of 2002, and a rating only slightly over "Needs Improvement" in his 2002 year-end evaluation.[1] The first quarter of 2003, the Kedzie/Foster restaurant received another "Needs Improvement" rating, with a score well below the scores the restaurant had received the previous year. In February of 2003, Hartzol received another written warning for problems with his "deposit validations" for January.[2]

Sometime in February of 2003, McDonald's temporarily transferred Hartzol to a restaurant location near the intersection of North and Laramie in Chicago (the "North/Laramie restaurant"). The parties dispute the reason for this temporary transfer; McDonald's claims it assigned Hartzol there because of his unique managerial experience and the availability of other managers to lead the Kedzie/Foster restaurant in his absence, while Hartzol

---

[1]From the undisputed evidence it appears that the restaurant was not rated for the first quarter of 2002. For the second quarter of 2002 the restaurant received a "Good" rating.

[2]Hartzol signed a written warning for that incident that stated, "any future security violation could result in suspension and/or termination."

5

contends that he was told he was being transferred because of "the demographics" of the predominately African-American customer base of that restaurant. Regardless, Hartzol served as manager of that restaurant until sometime in April of 2003, when he returned to the Kedzie/Foster restaurant.[3] The parties agree that Hartzol's pay and benefits were unaffected by the transfer.

In the Kedzie/Foster restaurant's second-quarter review in August of 2003, Fay gave the restaurant a "Good" rating despite the fact that the restaurant's numerical score should have rated it a "Needs Improvement." Fay stated that he gave the rating to reflect Hartzol's good work while at the North/Laramie restaurant.

In October of 2003, McDonald's began investigating the Kedzie/Foster restaurant because a large amount of cash was discovered missing from a closing deposit. In the course of this investigation, McDonald's reviewed other aspects of the restaurant's operations, including its food safety procedures.[4] McDonald's concluded that the Kedzie/Foster restaurant, and Hartzol

---

[3]In March of 2003 Hartzol was given a warning for being four hours late to his scheduled shift. It is unclear whether this warning related to his work at the North/Laramie restaurant or the Kedzie/Foster restaurant.

[4]Hartzol contests the relevance of this investigation, contending that it was he who first raised the issue of the missing cash with his superiors, and that he was not working at the restaurant that day because he had been called to work at the North/Laramie restaurant. McDonald's contends, however, that Hartzol was never disciplined because of the missing funds, but rather because of other violations.

in particular, had several violations of its policy, including (1) failing to complete food safety checklists and failure to sign the "Manager verification" section of that checklist; (2) allowing non-managers to perform the portions of the food safety checks that a manager should perform, and (3) failing to hold other employees accountable for violations of the policy. McDonald's also concluded that Hartzol had violated its security and cash procedures in various ways, including (1) failing to validate deposits and enforce and follow other deposit procedures;[5] (2) not following "safe controls"; and (3) not removing money from the cash registers every two hours to place in the safe. As a result of this investigation, McDonald's suspended Hartzol for one week without pay.[6] They also issued him a suspension letter, which Hartzol refused to sign, that stated, "Any further violation in [sic] any policies will result in disciplinary actions up to and including termination."

After he returned from his suspension, Hartzol requested and received a meeting with McDonald's senior management to discuss his suspension. The meeting did not result in Hartzol's suspension

---

[5]These violations included not verifying that restaurant deposits were taken to the bank within the proper time frame, not validating deposits within three days, and allowing other managers to take multiple deposits to the bank at one time.

[6]McDonald's also suspended an assistant manager for one week, and terminated a "swing shift manager." Both the assistant and swing shift managers were Hispanic.

being overturned. Three days later, Hartzol filed a charge with the Equal Employment Opportunity Commission ("EEOC") (the "October 2003 charge") in which he alleged that McDonald's discriminated against him based on his race by (1) suspending him in October of 2003 "for actions that similarly situated white employees are not disciplined for"; (2) transferring him to the North/Laramie restaurant "because it was in a predominately black neighborhood"; and (3) giving him a lower performance review and lower raise for July 2003 by not considering his transfer to the North/Laramie restaurant. He also generally alleged that he has "noticed that [McDonald's] targets non-white employees in management for discharge."

A few days after Hartzol filed this charge, two McDonald's employees (Michelle Moch ("Moch"), then the Operations Manager overseeing Hartzol's restaurant, and Julissa Plata ("Plata"), a Human Resources Consultant) came to visit him at the Kedzie/Foster restaurant. In Moch's version of events, the employees told Hartzol that McDonald's had received the October 2003 charge, that he was still expected to follow policies and procedures, and that Hartzol should direct any questions he had to the EEOC. Hartzol contends that the visit was an "intimidating situation," that he did not recall any conversation about his performance, and that they told him, "You will have to deal with the McDonalds Attorneys [sic] from this point on."

8

In January of 2004, Plata and Moch returned to the Kedzie/Foster restaurant to conduct a previously-scheduled "systems training day" in which the restaurant's operations were reviewed in preparation for a forthcoming "Full Operations Review." Hartzol admitted that he was "fully aware of the day and was prepared." As Plata and Moch reviewed operations, they looked through the restaurant's food safety checklists from the previous two months. They determined from these records that the restaurant had committed several violations of McDonald's food safety policies, including serving chicken and beef patties below McDonald's established minimum serving temperature. They also determined that Hartzol had not completed the "Manager verification" section of many checklists or had allowed assistant managers to sign the section, and had not noted corrective action in the book for some of the food safety violations. In his response to McDonald's statement of facts, Hartzol states that he does not disagree with these findings, but he did state in his deposition that Plata and Moch seemed to be looking for any violations he may have committed. Moch and Fay asked Hartzol about the violations and he "produced some documentation of corrective action" he had taken, but in McDonald's view the documentation was incomplete. Hartzol admits that he did not take corrective action with respect to all violations, but contends that he did not observe all of them. He argues that he had either verbal or written communication with

every employee against whom he took corrective action.[7]  Finally, McDonald's contends that Hartzol did not take appropriate disciplinary action (i.e. suspension or termination) against some employees who, per McDonald's policy, deserved such action; Hartzol contends that he did not have the authority to suspend or terminate employees.

A week after the systems training day, McDonald's placed Hartzol on administrative leave, with pay, pending an investigation.  Eleven days after he was placed on leave, Hartzol filed a second EEOC charge (the "January 2004 charge").  He alleged that he was discriminated against on the basis of his race and retaliated against for the filing of his earlier EEOC charge.  He specifically complained about Moch and Plata's visit to his restaurant in November to "intimidat[e]" him about his previous charge.  He further stated he was "harassed" during an in-restaurant training and placed on administrative leave.

In the meantime, McDonald's continued to investigate Hartzol.  The subsequent investigation revealed additional violations of McDonald's policies, including failure to change the restaurant's locks after keys went missing and false documentation that a particular employee was suspended for violations when payroll

---

[7]McDonald's argues this is a violation of policy; the policy requires managers to enter corrective action in the restaurant's computer and "physically present the corrective action document to the employee, to discuss it with the employee, and to request that the employee sign it."

10

records indicated she was not suspended (a charge that Hartzol disputes). Moch created a report of the violations and distributed it to Plata as well as Darrel Clark ("Clark"), a Human Resources Manager over the region that included the Kedzie/Foster restaurant, and Frank Kebe, Director of Operations and Moch's supervisor. Moch and Plata recommended to Clark and Kebe that Hartzol be discharged. After consulting with other McDonald's employees, McDonald's terminated Hartzol. McDonald's prepared a termination memorandum that stated Hartzol was discharged for failure to "adhere to and properly enforce Food Safety procedures in [his] restaurant."

In February of 2004, Hartzol filed a third EEOC charge against McDonald's (the "February 2004 charge"). In this charge he alleged he was discharged in retaliation for his October 2003 and January 2004 charges. The EEOC subsequently issued right-to-sue letters for all three charges on January 31, 2005, finding that it was unable to conclude that McDonald's violated Title VII.

Hartzol filed his complaint before this Court on April 11, 2005. In his complaint he alleges that he is no longer employed by McDonald's, and that he was discriminated against beginning October 23, 2003. He only attaches and references his November 2003 charge, not the other two charges that were filed. He alleges that he was discriminated against because of his race and retaliated against by McDonald's. In the section of the complaint in which he describes the facts that support his claims, he states:

> Filed case with EEOC. In November McDonald's
> received charge, and Michelle [Moch] and
> Julisa [Plata] came to see me at the
> restaurant about 8 pm. "You will have to deal
> with our Attorneys." [sic] is the statement
> Michelle made to me.

### III.

As an initial matter, I must determine which of Hartzol's
charges form a part of this complaint. Hartzol's complaint in this
case only references his November 2003 charge. Only that charge is
attached to the complaint; his factual allegations within the
complaint only specifically reference that charge, and he alleges
that the discrimination at issue began in October of 2003 (after
the date of some of the discrimination of which he complains in his
October 2003 charge). Hartzol's complaint references the fact that
at the time it was filed he no longer worked at McDonald's, but it
does not allege that he was discharged because of his race or in
retaliation for his earlier EEOC charges, as alleged in his
February 2004 charge.

Hartzol does reference the factual allegations in his October
2003 and February 2004 charges in his response to McDonald's motion
for summary judgment, however. McDonald's also responds to the
factual allegations contained in all the charges in its motion, and
includes facts in its Local Rule 56.1 statement that relate to the
other charges. Although McDonald's is clearly aware of all three
charges and has addressed the merits of each in its motion for
summary judgment, it nevertheless contends that I should only

consider the allegations contained in the November 2003 charge to be a part of Hartzol's claims in this case.

Normally, a party who has brought an EEOC charge may bring a Title VII claim on the substance of that charge only if he does so within ninety days of receiving a right to sue letter. 42 U.S.C. § 2000e-5(f)(1). McDonald's argues that because of this rule it is now too late for Hartzol to amend his complaint to add allegations about the other two charges. However, the Seventh Circuit has previously applied the doctrine of "constructive amendment" to Title VII cases. See *Torry v. Northrop Grumman Corp.*, 399 F.3d 876, 878 (7th Cir. 2005) (affirming trial court's consideration of race discrimination claim that was brought before the EEOC and addressed in parties' discovery and summary judgment motions, despite not being included in plaintiff's complaint). See also *Bannon v. The Univ. of Chicago*, No. 04 C 3081, 2006 WL 1722374, at *5-6 (N.D. Ill. June 16, 2006) (Hibbler, J.) (holding, over defendant's objections, that because parties' discovery and summary judgment motions addressed failure to promote claim that was not included in plaintiff's complaint, court would consider it to be part of plaintiff's case). These opinions are both in keeping with FED. R. CIV. P. 15(b) which provides, "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Such is the case here, where the parties clearly

13

contemplated Hartzol's other claims during discovery and have addressed the claims in their motion papers. As the Seventh Circuit explained in its decision in *Torry*, the Federal Rules "contemplate that the complaint will be superseded by pretrial orders . . .which among other things will define the issues for adjudication." *Torry*, 399 F.3d at 878.[8] I therefore will consider all three of Hartzol's EEOC charges against McDonald's to be part of this claim.[9]

IV.

Hartzol has brought a race discrimination claim under Title VII and 42 U.S.C. § 1981. Between his three charges he alleges several distinct instances of racial discrimination: (1) his October 2003 suspension for actions for which white employees were not suspended; (2) his transfer to the North/Laramie restaurant

---

[8]In the *Torry* opinion the Seventh Circuit also specifically provides that a party need not formally amend the complaint in order to apply the doctrine of constructive amendment because the complaint is "simply irrelevant" after the parties have litigated issues outside of the complaint. *Torry*, 399 F.3d at 878. Perhaps for this reason, neither the courts' opinion in *Torry* nor in *Bannon* address the ninety-day time limit for filing suit after receiving a right to sue letter from the EEOC; it appears in both cases that the plaintiff was beyond the ninety-day time limit. That time limit is therefore not an impediment for Hartzol in this case.

[9]As the court in *Torry* explained, I may do so even without motion by either party since Rule 15(b) provides that "failure so to amend does not affect the result of the trial of these issues." *See Torry*, 399 F.3d at 878 (quoting FED. R. CIV. P. 15(b)). Regardless, as Hartzol is proceeding *pro se*, I must liberally construe his reply to McDonald's motion. *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001), and I construe his reply to argue that these other charges are also at issue in this case.

because it was in a predominantly African-American neighborhood; (3) his mid-year 2003 performance evaluation and subsequent lower raise; (4) Moch and Plata's "intimidation" after filing his October 2003 charge; (5) "harassment" he received during in-restaurant training in January of 2004; and (6) his final placement on administrative leave. Hartzol has also generally alleged that McDonald's "targets non-white employees in management for discharge."

Even taking the facts in the light most favorable to Hartzol, the only direct evidence of racial discrimination he has presented is that, when he asked Fay why he was being transferred to the North/Laramie restaurant, Fay told him that the transfer was in part because of the "demographics" of that restaurant. The implication of this comment is that Hartzol was chosen because he is African-American, and the North/Laramie restaurant was in a predominately African-American neighborhood. Hartzol's difficulty is that this statement was not linked to an adverse employment action. McDonald's has presented unrefuted evidence that the transfer was temporary and did not result in lower pay or loss of position for Hartzol. It was not an adverse employment action. *See, e.g., Herrnreiter v. Chicago Hous. Auth.*, 315 F.3d 742, 745 (7th Cir. 2002) (holding that a transfer between two jobs that are "equivalent other than in idiosyncratic terms" is not an adverse

15

employment action).[10] The Seventh Circuit has repeatedly held that racial animus "is actionable only if it results in injury to the plaintiff; there must be a real link between the bigotry and an adverse employment action." *Adams v. Wal-Mart Stores, Inc.*, 324 F.3d 935, 939 (7th Cir. 2003) (quoting *Gorence v. Eagle Food Ctrs., Inc.*, 242 F.3d 759, 762 (7th Cir. 2001)).

Fay was also involved in Hartzol's mid-year 2003 performance evaluation and his October 2003 suspension, although there is no evidence that he made statements connected to those actions that indicated racial animus toward Hartzol. Because his statements about Hartzol's transfer were not related to Fay's other actions, they cannot be considered direct evidence of racial discrimination with respect to those actions. Neither is there a "'convincing mosaic' of circumstantial evidence" that would suggest the inference of intentional discrimination by a decision-maker in this case. *See Jordan v. City of Gary, Indiana*, 396 F.3d 825, 832 (7th Cir. 2005) (citing *Rhodes v. Illinois Dep't of Transp.*, 359 F.3d 498, 504 (7th Cir. 2004); *Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994)).

Hartzol is left to proceed under the indirect method set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To establish a prima facie case under that method, Hartzol must show

_____

[10]Because this transfer was not an adverse employment action I need not evaluate it under the indirect method of proof.

16

that 1) he is a member of a protected class; 2) he was performing his job satisfactorily; 3) he suffered an adverse employment action; and 4) McDonald's treated similarly-situated employees outside of his class more favorably. *O'Neal v. City of Chicago*, 392 F.3d 909, 911 (7th Cir. 2004). If he can establish this is the case, then McDonald's must provide a legitimate, non-discriminatory explanation for its actions toward Hartzol. *Ajayi v. Aramark Bus. Servs.*, 336 F.3d 520, 531 (7th Cir. 2003). If McDonald's can do so, then it is Hartzol's burden to show that McDonald's stated reason was pretextual.[11] *Id.*

McDonald's argues that Hartzol has not met the second, third or fourth prongs of this test.[12] McDonald's is correct that several of the incidents of which Hartzol complains were not adverse employment actions. An adverse employment action requires a "significant change[] in employment status." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). *See also Rhodes*, 359 F.3d at 504 (citing *Crady v. Liberty Nat'l Bank and Trust Co. of Indiana*, 993 F.2d 132, 136 (7th Cir. 1993)) (holding that a "materially adverse employment action is something 'more disruptive

---

[11]This analysis is the same for both Hartzol's Title VII and § 1981 claims. *See, e.g.*, *Lalvani v. Cook County, Illinois*, 269 F.3d 785, 789 (7th Cir. 2001) ("A *prima facie* case of race or ethnicity discrimination under § 1981 is predicated on the same elements as an ethnicity discrimination claim under Title VII, and we thus analyze these two aspects of his case together.").

[12]McDonald's does not dispute that Hartzol is a member of a protected class.

than a mere inconvenience or an alteration of job
responsibilities'"). Here, Hartzol has only shown that his October
2003 suspension and final placement on administrative leave could
constitute adverse employment actions.[13] Hartzol's October 2003
suspension was unpaid and lasted for one week. McDonald's has
cited no authority that a loss of one week's pay, although perhaps
a relatively small economic loss, is not an adverse employment
action. Hartzol's final administrative leave was paid and lasted
several weeks. McDonald's argues that this was not an adverse
employment action because Hartzol has not shown he was denied any
economic benefits. Still, a suspension lasting several weeks that
denies an employee the opportunity to work or to advance is an
adverse employment action. *See Herrnreiter*, 315 F.3d at 744
(finding that adverse employment actions can include actions which
do not change the financial terms of one's employment but that
"significantly reduce[] the employee's career prospects by
preventing him from using the skills in which he is trained and

---

[13]The other incidents (a poor performance review, one instance
of "harassment" and one of "intimidation"), although undoubtedly
undesirable for Hartzol, did not change his employment status. The
Seventh Circuit has previously held that although "negative
performance evaluations may be evidence of discrimination, they are
not alone considered to be actionable adverse employment actions."
*Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 862 (7th Cir.
2005) (citing *Haywood v. Lucent Techs, Inc.*, 323 F.3d 524, 532 (7th
Cir. 2003)). Hartzol contends his lower performance evaluation
resulted in denial of a raise, but he has presented no evidence
that this is the case, and thus has not met his burden for summary
judgment as to this claim.

experienced, so that the skills are likely to atrophy and his career is likely to be stunted"). The two instances of suspension and administrative leave of which Hartzol has complained are adverse employment actions.[14]

With respect to these two adverse employment actions, Hartzol does not need to show that his performance was satisfactory. The Seventh Circuit has held that this prong is inapplicable to disparate treatment claims where an employee acknowledges (or concedes) wrongdoing but contends he was disciplined more severely than similarly-situated employees outside of his protected class. See Curry v. Menard, Inc., 270 F.3d 473, 477-78 (7th Cir. 2001) (holding that this factor was inapplicable where plaintiff cashier admitted she had a cash discrepancy in her cash register but contended she was punished more severely than non-black employees). See also Flores v. Preferred Technical Group, 182 F.3d 512, 515 (7th Cir. 1999) (holding that where a plaintiff alleges she was disciplined more severely than co-workers, "it makes little sense . . . to discuss whether she was meeting her employer's reasonable expectations").

---

[14]After being placed on administrative leave in 2004, McDonald's ultimately discharged Hartzol. While discharge is clearly an adverse employment action, Hartzol has not alleged that his discharge was racially discriminatory, but rather that he was discharged in retaliation for filing his previous EEOC charges. I therefore need not consider his discharge for purposes of his race discrimination claim.

19

Finally, Hartzol must show that similarly-situated employees were treated more favorably than he was. Hartzol argues that non-African-American employees were not placed on administrative leave for the food safety violations of which he was accused. To show that another employee is similarly situated to him, Hartzol must show that "there is someone who is directly comparable to [him] in all material respects." *See Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 680 (7th Cir. 2002). "[A] court must look at all relevant factors." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 617 (7th Cir. 2000). Because the actions of which Hartzol complains were disciplinary in nature, Hartzol must show that another employee who is similarly situated to Hartzol "with respect to performance, qualifications, and conduct" was treated differently. *Peele v. Country Mut. Ins. Co.*, 288 F.3d 319, 330 (7th Cir. 2002) (citing *Radue*, 219 F.3d at 617). While Hartzol has generally alleged that African-American employees are disciplined more harshly, he has not identified particular employees who are similarly situated to him who were given preferential treatment. Hartzol identifies one Caucasian restaurant manager who was suspended for a cash-handling violation, like Hartzol's October 2003 suspension. Hartzol complains that this employee received preferential treatment even though he agrees that the employee

received the "same discipline" that he did.[15] Hartzol has not shown that this employee was similarly situated to him.[16]

Hartzol also identifies four Caucasian restaurant managers whose restaurants all received "unacceptable" food safety ratings during surprise audits (called "Short Operations Reviews" or "SORs"). He argues that, while he was placed on administrative leave as a result of his violation, these employees were not.[17] None of them had the same supervisor as he did. In three cases, the evidence shows that the food safety violation at issue was the employee's first food safety violation; Hartzol was placed on paid administrative leave only after incurring other violations. The other manager was actually a first assistant manager who was only acting as a manager; she was not similarly situated to Hartzol with respect to her position. Although the nature of the violation was

---

[15] Even taking the facts in the light most favorable to Hartzol, it is clear this employee was also suspended for a week. The record is not clear whether this suspension was with or without pay, but Hartzol agrees that it was the "same" discipline.

[16] Hartzol's complaint about this employee seems to be that he was ultimately made a restaurant manager at another location despite this violation, but that has no relevance to Hartzol's situation. In addition, during his deposition Hartzol made a point of emphasizing that this employee "was treated different [sic] because his father-in-law is or was an executive at Oak Brook," providing another basis to conclude that, while this employee may have received preferential treatment, he was not similarly situated to Hartzol.

[17] Hartzol also points out that he never failed an SOR, but the fact that his violations were not discovered during an SOR is not relevant to this comparison since the manner in which they were discovered was substantially similar.

21

not clear in all cases, it appears that the violations were minor.[18] In short, none of these employees are similarly situated to Hartzol.

Because Hartzol has not met the requirements for a showing of racial discrimination, I grant summary judgment to McDonald's on Hartzol's racial discrimination claim.[19]

V.

I next consider Hartzol's retaliation claim. Hartzol alleges that McDonald's took the following actions to retaliate against him: (1) Moch and Plata's "intimidation" after filing his October 2003 charge; (2) "harassment" he received during in-restaurant training in January of 2004; (3) his placement on administrative leave that same month; and (4) his ultimate discharge from McDonald's. Like his race discrimination claim, Hartzol may proceed under the direct or indirect method. Traditionally, the Seventh Circuit has held that a plaintiff may proceed under the direct method if he can show "an admission of retaliation or statements or conduct from the decisionmaker from which retaliation

_____

[18]The evidence shows that one of these employees subsequently received a second violation for serving expired food, and was discharged for that violation.

[19]Hartzol has also generally alleged that McDonald's "targets non-white employees in management for discharge." However, he has presented no evidence of this, and Hartzol is the only party to this case. It is McDonald's actions towards Hartzol which are at issue in this litigation and not its alleged actions toward other African-American employees.

22

may be inferred." *See Radue*, 219 F.3d at 616. Here, Hartzol could potentially proceed under the direct method for his claim that Moch and Plata intimidated him after filing his October 2003 charge. There, it was clear that Moch and Plata took the actions they did because of Hartzol's charge.[20] However, either under the direct or indirect method, taking the evidence about this "intimidation" in the light most favorable to Hartzol, there is no evidence that the "intimidation" amounted to an adverse employment action or would have "been materially adverse to a reasonable employee" as is required under the direct method.[21] Hartzol stated in his deposition that Moch and Plata came to his restaurant and, in a "brief" and "stern" conversation, informed him that they were aware of his EEOC charge and that if he had any questions he needed to deal with McDonald's attorneys. He testified that they told him they thought that his concerns had been resolved. He said he felt intimidated because it was "rare" for these individuals to be in

---

[20]This statement is not sufficiently connected to any of the other actions taken against him to create direct evidence of retaliation with respect to the alleged "harassment" or his suspension or discharge. *See Moser v. Indiana Dep't of Corrections*, 406 F.3d 895, 905 (7th Cir. 2005).

[21]As discussed below, the Supreme Court recently determined that a party need not show that he suffered an adverse employment action in order to make a claim for retaliation under Title VII. *See Burlington N. & Santa Fe Ry. Co. v. White*, – U.S. –, 2006 WL 1698953, *10 (June 22, 2006) (internal citations omitted).

the restaurant "that late."[22] But this is not enough to have caused Hartzol "real harm" as required to constitute retaliation. *See, e.g., Johnson v. Cambridge Indus.*, 325 F.3d 892, 902 (7th Cir. 2003). Regardless of whether Hartzol proceeds on this "intimidation" under the direct or indirect method, it does not constitute retaliation.

To make a claim for retaliation under the indirect method, the Seventh Circuit has traditionally required a showing that (1) Hartzol was engaged in statutorily protected activity; (2) he was performing his job according to McDonald's legitimate expectations; (3) despite that performance, he suffered an adverse employment action; and (4) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *See Luckie v. Ameritech Corp.*, 389 F.3d 708, 714 (7th Cir. 2004) (citing *Stone v. City of Indianapolis Pub. Utils. Div.*, 281 F.3d 640, 644 (7th Cir. 2002); *Williams v. Waste Mgmt. of Illinois*, 361 F.3d 1021, 1031 (7th Cir. 2004)). However, the Supreme Court recently determined that a party need not show that he suffered an adverse employment action, but instead may show that his employer's action "would have been materially adverse to a reasonable employee" such that it "might well have dissuaded a

---

[22]He further testified, "So at that moment I began to say that they are going to try to get rid of me now. I was fearing for my job and I was intimidated at the fact that they would even come to the restaurant that late just to share with me, well, you have to deal with the lawyers."

reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, – U.S. –, 2006 WL 1698953, \*10 (June 22, 2006) (internal citations omitted). In this opinion, the Supreme Court emphasized that "[t]he scope of the anti-retaliation provision [of Title VII] extends beyond workplace-related or employment-related retaliatory acts and harm." *Id.* This is in keeping with precedent from the Seventh Circuit. *See, e.g., Johnson*, 325 F.3d at 902.

Here, there is no question that Hartzol was engaged in a statutorily protected activity by filing multiple charges with the EEOC. Even assuming that Hartzol suffered some materially adverse action and assuming that he was meeting McDonald's legitimate expectations (which may not be required here for the reasons discussed with relation to his discrimination claim), Hartzol has simply presented no evidence that he was treated less favorably than employees who did not file EEOC charges. At his deposition he testified that he could not recall "any McDonald's employees that did not complain of discrimination or did not file an EEOC charge that had comparable jobs to [his], and committed similar food safety violations as [him] that were not placed on administrative leave or terminated." He also has not identified any such employees in response to McDonald's motion for summary judgment. Thus, he cannot make out a prima facie case for retaliation.

VI.

25

Hartzol's arguments can be interpreted to contend that all the incidents of which he complained combined to create a hostile work environment based on his race or created in order to retaliate against him. However, even taking these incidents in the aggregate, and even taking the facts in the light most favorable to Hartzol, Hartzol has not shown evidence of an environment that "a reasonable person would find hostile or abusive." *Cerros v. Steel Techs., Inc.*, 288 F.3d 1040, 1045 (7th Cir. 2002). Therefore, I grant summary judgment as to any hostile work environment claim Hartzol may be asserting.[23]

## VII.

Since Hartzol cannot establish a *prima facie* case of retaliation, race discrimination, or a hostile work environment, I need not consider whether McDonald's has provided a legitimate, non-discriminatory explanation for its actions, and whether Hartzol can show that these reasons were pretextual. Considering the facts in the light most favorable to Hartzol, Hartzol cannot show that

---

[23]Hartzol alleged in his deposition that Fay created a hostile work environment by his manner and the way in which he dealt with restaurant employees. Even assuming this claim has not been waived, having a supervisor yell or act unpleasantly does not rise to the level of a hostile work environment. *See, e.g., Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1035 (7th Cir. 2004). *See also Knox v. Indiana*, 93 F.3d 1327, 1334-35 (7th Cir. 1996) (holding that to survive summary judgment on a hostile work environment claim there must be evidence connecting the harassment with the plaintiff's protected status).

McDonald's has violated Title VII or 42 U.S.C. § 1981, and I grant McDonald's motion for summary judgment.

**ENTER ORDER:**

Elaine L. Bucklo

**Elaine E. Bucklo**
United States District Judge

Dated:  July 5 , 2006